**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**MCMILLIAN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 3, 2019**

# In the Court of Appeals of Georgia

A19A0390. SARAT-VASQUEZ v. THE STATE.

McMILLIAN, Judge.

Marlon Ivan Sarat-Vasquez ("Vasquez") appeals the denial of his motion for new trial after a jury convicted him of one count of aggravated child molestation and two counts of child molestation[1] involving the minor daughter of Vasquez's friends.[2] On appeal, Vasquez asserts that the trial court violated his due process rights by failing to ensure that his right to be assisted by a certified interpreter was safeguarded

---

[1] After a jury convicted Vasquez on all three counts, the two child molestation charges were merged for sentencing into the charge of aggravated child molestation, for which he received a life sentence with 25 years to serve.

[2] Vasquez does not contest the sufficiency of the evidence to support his convictions on appeal, and having reviewed the record, we find that the evidence presented by the State was sufficient to prove the charges against Vasquez beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

and that any purported waiver of that right was not knowing, voluntary, or meaningful. He also asserts a claim of ineffective assistance counsel on this ground. Because we find that Vasquez has failed to establish any violation of his due process rights, we affirm.

Where, as here, the trial court's denial of the motion for new trial involves a mixed question of law and fact, "[w]e review de novo the trial court's decision as to any questions of law, while applying the clearly erroneous standard of review to any factual findings made by that court . . . . [, and] we defer to the trial court's credibility determinations." (Citation and punctuation omitted.) *State v. Enich*, 337 Ga. App. 724, 726 (1) (788 SE2d 803) (2016). See also *Wedel v. State*, 328 Ga. App. 28, 28 (761 SE2d 454) (2014). "Under the highly deferential clear-error standard. . . [,] we will not reverse a trial court's factual findings . . . if there is any evidence to support them, and this holds true even if the findings are based upon circumstantial evidence and the reasonable inferences which flow from them." (Citation and punctuation omitted) *Yarbrough v. State*, 303 Ga. 594, 596-97 (2) (814 SE2d 286) (2018).

As detailed by the trial court in its order denying the motion for new trial, on the first day of trial, the trial judge asked Vasquez in English if he wanted the trial court to provide him with an interpreter, to which Vasquez replied in English, "No,

I don't need an interpreter." When the judge then asked him if he was sure, he replied, "Yes, ma'am." At that point the interpreter asked to be excused, and the trial judge granted that request. Additionally, the trial judge "addressed [Vasquez] directly after the close of the State's case. The Court went through [Vasquez's] various rights related to testifying, all in English, and the Defendant responded appropriately, in English, each time." Although Vasquez initially appeared to indicate that he wanted to testify, after consultation with his counsel, he announced that he did not wish to testify.

At the hearing on the motion for new trial, Vasquez's trial counsel testified that he met with Vasquez before trial at least three or four times. Based on these interactions, trial counsel believed that Vasquez understands 90 percent or more of English. Trial counsel and Vasquez discussed the issue of having an interpreter at trial. Although trial counsel told Vasquez that he was entitled to have an interpreter, the attorney advised him that it would look better if he did not use interpretation services at trial, especially as some of the State's witnesses would be using an interpreter.[3] Trial counsel thought it would make Vasquez look like he had been in

---

[3] We note that an interpreter was employed for the testimony of the victim's mother.

the country longer and had been working with English-speaking people longer. Vasquez agreed with this strategy. Trial counsel asked another attorney, who is fluent in Spanish, to serve as his assistant counsel and to sit at the defense table at trial and assist Vasquez in understanding the proceedings.

To counter trial counsel's testimony regarding Vasquez's ability to understand English, his appellate counsel introduced a copy of the original public defender client folder, which displayed a sticker that said "Interpreter Needed," as well as a note in the file where someone had written, "Speaks very little English, prefers Spanish." Trial counsel explained that he did not know who in his office may have affixed the sticker and that the note was faxed to them from the indigent defense office. No other evidence was presented as to who may have authored the note.

The assistant counsel testified that he did not interpret anything for Vasquez during trial and that Vasquez appeared to understand what was taking place. Additionally, although Vasquez did not speak much during trial, the two passed notes in which Vasquez wrote in Spanish, and the assistant counsel wrote in both English and Spanish. The assistant counsel stated that he did not recall Vasquez ever asking for an interpreter at trial, and if assistant counsel believed that Vasquez needed help with translation, he would have notified the judge.

4

A legal assistant, who speaks Spanish and who accompanied trial counsel two to three times to help with translation when he visited Vasquez in jail, testified that although Vasquez spoke very little English, she believed that he understood more English than he spoke. She said she would explain legal terms to him in Spanish, but she agreed that most of the clients in the public defender's office need help understanding such terminology. She also stated that trial counsel visited Vasquez without her.

Vasquez testified at the hearing, using an interpreter. He stated that he only spoke "[a]bout 20 percent" English. He said that he did not understand when trial counsel spoke to him in English, and he had to get help translating letters written in English by his appellate counsel. He said that he refused an interpreter on the advice of his counsel, and there were parts of the trial and witness testimony that he did not understand, although he did not identify any specific testimony or other portions of the trial that he did not follow. However, Vasquez said that he did not disagree with his attorney's advice regarding the interpreter. He also said that he knew there were interpreters present at trial, who could have assisted him, but he never asked for help. Moreover, even though he knew he had Spanish-speaking attorneys next to him at

trial, he never spoke to them about how the trial was going. He further admitted that he was able to talk to his attorneys about evidence he thought was important.

It is well settled that

[a] criminal defendant's "right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings" is guaranteed by the Sixth Amendment and the due process clause of the Fourteenth Amendment to the United States Constitution. (Citation and punctuation omitted.) *Tennessee v. Lane*, 541 U.S. 509, 523 (124 SCt 1978, 158 LE2d 820) (2004); see also Ga. Const. of 1983, Art. I, Sec. I, Par. I.

*Ling v. State*, 288 Ga. 299, 300 (1) (702 SE2d 881) (2010). And this right is implicated where a defendant asserts that the trial court's failure to provide an interpreter prevented him from understanding and following the trial because "every criminal defendant – if the right to be present is to have meaning – must possess sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." (Citations and punctuation omitted.) Id. at 301(1). See also *Ramos v. Terry*, 279 Ga. 889, 892 (1) (622 SE2d 339) (2005) ("The use of qualified interpreters is necessary to preserve meaningful access to the legal system for persons who speak and understand only languages other than English. [Cit.]"). "One who is unable to communicate effectively in English and does not receive an interpreter's

6

assistance is no more competent to proceed than an individual who is incompetent due to mental incapacity." *Ling*, 288 Ga. at 301 (1).

The trial court found that Vasquez's post-conviction assertion that he only understood about 20 percent of English and the fact that he wrote one note in Spanish during trial were not enough to overcome his trial counsels' testimony that he understands English and his apparent ability to respond appropriately when questioned by the trial judge in English. We must defer to the trial court's credibility determination in this regard. Additionally, in light of this evidence, the trial court would have been entitled to find that the notations on Vasquez's files regarding his need for an interpreter and his ability to speak English were not sufficient to show a violation of due process, especially as the sources of these notations were never identified. Moreover, the legal assistant testified that Vasquez understood more English than he spoke, he admitted that he knew he could consult in Spanish with his counsel at anytime, and he was able to discuss the evidence at trial with them. The record also supports the trial court's finding that Vasquez agreed with his trial

7

counsel's advice to forego an interpreter in order to increase his chances of an acquittal at trial.[4]

Accordingly, we find no violation of Vasquez's due process rights, and we affirm the denial of his the motion for new trial on this ground. See *Cruz v. State*, 305 Ga. App. 805, 809 (2) (700 SE2d 631) (2010) ("Given the fact that the defendants never objected to the Spanish translation of the proceedings and even affirmatively stated that they were able to understand their interpreters, we cannot say that the trial court clearly erred in finding that defendants' [post-conviction] claim that they could not understand the proceedings lacked credibility."); *Hersi v. State*, 257 Ga. App. 63, 64 (1) (570 SE2d 365) (2002) (even where defendant's command of the English language was not perfect, the absence of an official interpreter other than defendant's brother clearly did not result in a denial of his right to meaningfully participate in the proceedings against him).

2. Vasquez also asserts that his trial counsel was ineffective because he failed to ensure that Vasquez had an interpreter and, in fact, advised him to forego

---

[4] We express no opinion as to whether this strategy was reasonable. See *Ling*, 288 Ga. at 302, n. 1 ("It is not professionally reasonable to decide to forego obtaining an interpreter for an otherwise incompetent criminal defendant based on speculative fears of juror bias, especially where . . . there is no evidence that the defendant participated in or consented to the decision.")

interpretation services. To establish his claim of ineffective assistance of counsel, Vasquez must show both that his attorney's performance was deficient and that he was prejudiced as a result of his counsel's performance. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). A defendant's "[f]ailure to satisfy either prong of the Strickland test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong." (Citation and punctuation omitted.) *Green v. State*, 302 Ga. 816, 818 (2) (809 SE2d 738) (2018).

As we have found that Vasquez has failed to show that his due process rights were violated at trial by the absence of an interpreter, he cannot show the requisite prejudice under the *Strickland* test to establish his claim of ineffective assistance of counsel. See *Cisneros v. State*, 299 Ga. 841, 851 (3) (a) (792 SE2d 326) (2016) (claim of ineffective assistance of counsel fails where defendant fails to carry his burden of showing that interpretation provided at trial was so inadequate as to deny him a fundamentally fair trial).

*Judgment affirmed. McFadden, P. J., and Goss, J., concur.*